IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CONSTELLATION TECHNOLOGIES LLC, <br><br> *Plaintiff* <br><br> vs. <br><br> WINDSTREAM HOLDINGS, INC., WINDSTREAM CORPORATION, and WINDSTREAM COMMUNICATIONS, INC., <br><br> *Defendants* | Civil Action No. 2:13-CV-1080 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiff Constellation Technologies LLC ("Constellation"), by and through its undersigned attorneys, hereby pleads the following claims for patent infringement against Defendants Windstream Holdings, Inc., Windstream Corporation, and Windstream Communications, Inc. (collectively, "Windstream") and alleges as follows.

### PARTIES

1.      Plaintiff Constellation is a Delaware limited liability company with its principal place of business located at Legacy Town Center 1, 7160 North Dallas Parkway, Suite No. 250, Plano, TX 75024.

2.      Constellation is a wholly-owned subsidiary of Rockstar Consortium US LP ("Rockstar"), which has been actively conducting business and operations at Constellation's current location in Plano since at least 2012.

3.      Constellation is the assignee and owns all right, title, and interest to U.S. Patent Nos. 6,373,923 (the "'923 Patent"), 6,650,618 (the "'618 Patent"), 7,154,879 (the "'879 Patent"), 7,564,895 (the "'895 Patent") and 8,134,917 (the "'917 Patent") (collectively, the "Patents-in-

Suit").

4.      The Patents-in-Suit (or applications leading to the Patents-in-Suit) were acquired from Nortel Networks Limited, a wholly-owned subsidiary of Nortel Networks Corporation (together with its affiliates, "Nortel").  Beginning in 1991, Nortel maintained an 800,000-square-foot headquarters that housed thousands of employees on Lakeside Boulevard, off North Central Expressway in Richardson, Texas.  Rockstar moved from the Richardson, Texas Nortel building to its Plano, Texas location in 2012.

5.      On information and belief, Windstream Holdings, Inc. is a Delaware Corporation headquartered at 4001 Rodney Parham Road, Little Rock, Arkansas 72212.

6.      On information and belief, Windstream Corporation is a Delaware Corporation headquartered at 4001 Rodney Parham Road, Little Rock, Arkansas 72212.

7.      On information and belief, Windstream Communications, Inc. is a Delaware Corporation headquartered at 4001 Rodney Parham Road, Little Rock, Arkansas 72212.

8.      On information and belief, through its various acquisitions and purchases in recent years, Windstream currently owns a local and long-haul fiber network of approximately 115,000 miles, provides voice, video and data services in at least 48 states and the District of Columbia, and operates 23 data centers across the United States of America.

9.      On information and belief, Windstream attained the milestone of 1 million high-speed internet service subscribers in 2009.

10.      On information and belief, Windstream operates, sells and offers to sell services in Texas, including Marshall, Texas, including "Business Broadband, High-Speed Internet Access, VoIP, Voice, Network, Data and Cloud Services."  *See* http://www.windstreambusiness.com/shop/products/tx/marshall.

## FACTUAL BACKGROUND

11.      Nortel was a multinational telecommunications and data networking equipment manufacturer headquartered in Ontario, Canada.  It was founded in Montreal, Quebec in 1895.

At its peak, Nortel employed over 94,500 workers worldwide.

12.     Nortel was the source of many of the most important innovations in history in the field of telecommunications and networking.  Between 1992 and 2009, Nortel spent over 34 billion on research and development conducted at centers across North America.

13.     In 2011, a group of the some of the most respected high technology companies in the world, including Apple, Inc., Microsoft Corporation, Ericsson, Sony Corporation, and Blackberry, stepped in to preserve as much of Nortel's exceptional patent portfolio as possible. This group created a consortium that would serve as the steward of the portfolio.

14.     The acquisition of Nortel's patent portfolio by the consortium was subject to review by the United States Department of Justice's Antitrust Division.  The review period expired on March 12, 2012.

15.     Shortly after the expiration of the review period imposed by the United States Department of Justice, Rockstar invited Windstream to negotiate a license to patents in the portfolio.  Windstream has refused to obtain a license.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and §§ 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

17.     Venue is proper in this federal district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

18.     This Court has personal jurisdiction over Windstream.  Windstream conducts business in the State of Texas and in this district.  In particular, as detailed in Paragraphs 5 through 10, Windstream has regularly and deliberately engaged in, and continues to engage in, the operation of infringing services in the State of Texas and in this judicial district.

## FIRST CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 6,373,923)

19.     Constellation re-alleges and incorporates by reference Paragraphs 1 through 18 as if fully set forth herein.

20.     The '923 Patent, entitled "Line Testing Method and Apparatus Therefor" was duly and legally issued on April 16, 2002.  A true and correct copy of the '923 patent is attached as Exhibit A.

21.     The '923 Patent names Roger James Williamson and Michael Francis Grant as co-inventors.

22.     The '923 Patent has been in full force and effect since its issuance.  Constellation owns by assignment the entire right, title and interest in and to the '923 Patent, including the right to seek damages for past, current and future infringement thereof.

23.     The '923 Patent "relates, in general, to a method of and apparatus for testing a telecommunication link and is particularly, but not exclusively, applicable to a method of and apparatus for testing a copper pair (connecting a telephone exchange to a subscriber unit) to determine its ability to support high frequency data transmissions that are ancillary to its originally designated function of supporting voice telephony."  Ex. A at 1:5-12.

24.     The patent references "at least some of the deficiencies in the prior art" for "testing a wireline communication resource."  *Id.* at 4:47-50.  Examples of such testing include "an accurate assessment of a loop for broadband and wideband applications, such as ADSL and VDSL."  *Id.* at 4:35-40.

25.     The patent discusses "[a] method of assessing suitability of a wireline communication resource for supporting data transmission at relatively high frequency between an infrastructure node and a subscriber terminal, the wireline communication resource inherently arranged to support voice band transmissions at relatively low frequency, the method comprising the steps of: at a test point, sending a test signal at the relatively high frequency to the subscriber

terminal, the test signal having a predetermined level; detecting an attenuated level of the test signal at the subscriber terminal; communicating an indication of the attenuated level of the test signal to the test point; and at the test point, assessing the suitability of the wireline communication resource for supporting data transmission at relatively high frequency based upon receipt of the indication of the attenuated level and the predetermined level." *Id.* at 14:6-25.

26.     On information and belief, Windstream operates high speed internet services including DSL services.

27.     Constellation is informed and believes, and thereon alleges, that Windstream has infringed and will continue to infringe, including via at least direct infringement, one or more claims of the '923 Patent, in violation of 35 U.S.C. § 271, by, among other things, operating, selling and offering to sell within the United States, without authority or license from Constellation, services, including ADSL and VDSL services, that fall within the scope of one or more claims of the '923 Patent.

28.     Constellation is informed and believes, and thereon alleges, that Windstream had pre-suit knowledge of the '923 Patent.

29.     As a result of Windstream's infringement of the '923 Patent, Constellation has been damaged.   Constellation is entitled to recover for damages sustained as a result of Windstream's wrongful acts in an amount subject to proof at trial.

30.     In addition, Windstream's infringing acts and practices have caused and are causing immediate and irreparable harm to Constellation.

31.     Constellation is informed and believes, and thereon alleges, that Windstream's infringement of the '923 Patent has been and continues to be deliberate and willful, and that this is therefore an exceptional case warranting an award of treble damages and attorney's fees to Constellation pursuant to 35 U.S.C. §§ 284-285.

## SECOND CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 6,650,618)

32.     Constellation re-alleges and incorporates by reference Paragraphs 1 through 18 as if fully set forth herein.

33.     The '618 Patent, entitled "Method and Apparatus for Managing Communications between Nodes in a Bi-directional Ring Network" was duly and legally issued on November 18, 2003.  A true and correct copy of the '618 Patent is attached as Exhibit B.

34.     The '618 Patent names Wang-Hsin Peng and Yang Sup Lee as co-inventors.

35.     The '618 Patent has been in full force and effect since its issuance.  Constellation owns by assignment the entire right, title and interest in and to the '618 Patent, including the right to seek damages for past, current and future infringement thereof.

36.     The '618 Patent "relates generally to the management of communications between nodes in a network, and more particularly to schemes for managing data flow between nodes in a bi-directional ring network."  Ex. B at 1:8-11.

37.     The patent states that "[a] linear network [is] considered . . . as a type of ring network, i.e., a special case of a ring network which may be termed a broken ring network."  *Id.* at 1:33-35.

38.     The patent describes "a need for a local fairness scheme for managing data flow between nodes in a bi-directional ring network having superior performance that utilizes bandwidth more effectively."  *Id.* at 1:59-62.

39.     The patent further describes "[a] method for managing the access of nodes to a bi-directional ring network, the method comprising the steps of: a. identifying a congested span comprising a plurality of nodes; b. adjusting the output bandwidth of the nodes in the congested span as a function of the congestion in the span."  *Id.* at 13:21-28.

40.     On information and belief, Windstream operates resilient packet ring services.

41.     Constellation is informed and believes, and thereon alleges, that Windstream has

infringed and will continue to infringe, including via at least direct infringement, one or more claims of the '618 Patent, in violation of 35 U.S.C. § 271, by, among other things, operating, selling and offering to sell within the United States, without authority or license from Constellation, services, including resilient packet ring services, that fall within the scope of one or more claims of the '618 Patent.

42.     Constellation is informed and believes, and thereon alleges, that Windstream had pre-suit knowledge of the '618 Patent.

43.     As a result of Windstream's infringement of the '618 Patent, Constellation has been damaged.   Constellation is entitled to recover for damages sustained as a result of Windstream's wrongful acts in an amount subject to proof at trial.

44.     In addition, Windstream's infringing acts and practices have caused and are causing immediate and irreparable harm to Constellation.

45.     Constellation is informed and believes, and thereon alleges, that Windstream's infringement of the '618 Patent has been and continues to be deliberate and willful, and that this is therefore an exceptional case warranting an award of treble damages and attorney's fees to Constellation pursuant to 35 U.S.C. §§ 284-285.

### THIRD CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 7,154,879)

46.     Constellation re-alleges and incorporates by reference Paragraphs 1 through 18 as if fully set forth herein.

47.     The '879 Patent, entitled "Point to Multipoint Network" was duly and legally issued on December 26, 2006.  A true and correct copy of the '879 Patent is attached as Exhibit C.

48.     The '879 Patent names Robert Pfeffer, David Mann and Brian Unitt as co-inventors.

49.     The '879 Patent has been in full force and effect since its issuance.  Constellation

2919865

owns by assignment the entire right, title and interest in and to the '879 Patent, including the right to seek damages for past, current and future infringement thereof.

50.     The '879 Patent "relates to a method and apparatus for providing a high capacity point-to-multipoint network, a system incorporating the same, and signals generated by such a system." Ex. C at 1:13-16.  The patent is further "particularly related to, but in no way limited to, point-to-multipoint networks, known as fibre to the user (FTTU)." *Id.* at 1:16-18.

51.     The '879 Patent "seeks to provide an improved method and apparatus for providing high capacity point-to-multipoint communications network, especially in access networks." *Id.* at 2:14-16.

52.     The patent describes "[a] point-to-multipoint network arrangement comprising: a head-end station; at least one subscriber station; a point-to-multipoint network providing shared medium connectivity between each subscriber station and the head-end station; wherein each subscriber station is arranged to transmit data that has previously been segmented into packet-switched transport protocol packets, to the head-end station, using a time division multiple access protocol, the head-end station being arranged to allocate a number of consecutive time slots to each subscriber station, each subscriber station having framing apparatus arranged to frame a packet of at least 576 bytes directly without segmentation of the packet, and synchronization apparatus arranged to send the frame to the head-end station during an allocation consecutive time slots and with a guard band determined without using ranging." *Id.* at 6:21-39.

53.     On information and belief, Windstream deploys passive optical networks.

54.     Constellation is informed and believes, and thereon alleges, that Windstream has infringed and will continue to infringe, including via at least direct infringement, one or more claims of the '879 Patent, in violation of 35 U.S.C. § 271, by, among other things, operating, selling and offering to sell within the United States, without authority or license from Constellation, services, including point-to-multipoint services, that fall within the scope of one or more claims of the '879 Patent.

55.    Constellation is informed and believes, and thereon alleges, that Windstream had pre-suit knowledge of the '879 Patent.

56.    Despite its knowledge of the patent and evidence of infringement, Windstream continues to willfully infringe the '879 Patent.

57.    As a result of Windstream's infringement of the '879 Patent, Constellation has been damaged.   Constellation is entitled to recover for damages sustained as a result of Windstream's wrongful acts in an amount subject to proof at trial.

58.    In addition, Windstream's infringing acts and practices have caused and are causing immediate and irreparable harm to Constellation.

59.    Constellation is informed and believes, and thereon alleges, that Windstream's infringement of the '879 Patent has been and continues to be deliberate and willful, and that this is therefore an exceptional case warranting an award of treble damages and attorney's fees to Constellation pursuant to 35 U.S.C. §§ 284-285.

## FOURTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 7,564,895)

60.    Constellation re-alleges and incorporates by reference Paragraphs 1 through 18 as if fully set forth herein.

61.    The '895 Patent, entitled "Method and Apparatus for Monitoring Channel Frequency Response" was duly and legally issued on July 21, 2009.  A true and correct copy of the '895 Patent is attached as Exhibit D.

62.    The '895 Patent names Gin Liu, Andrew Dempster, Mike M. J. Wingrove, Gwendolyn Kate Harris, Michel M. Darveau, Leslie Humphrey and Mohammed Reza Pakravan as co-inventors.

63.    The '895 Patent has been in full force and effect since its issuance.  Constellation owns by assignment the entire right, title and interest in and to the '895 Patent, including the right to seek damages for past, current and future infringement thereof.

64.     The '895 Patent "relates to a method and apparatus for determining, storing and retrieving channel frequency characteristics for discrete multi-tone (DMT) and is particularly concerned with asymmetric digital subscriber lines (ADSL) and very high bit-rate digital subscriber lines (VDSL) using DMT modulation."  Ex. D at 1:7-11.

65.     The patent "propose[s] a new way to collect information available in the ADSL modems, such that this information can be used for enhancing the ADSL services maintenance and diagnostics."  *Id.* at 6:17-20.  Such new information includes "per bin frequency channel response, per bin signal to noise ratio and per bin noise" stored "in the ATU-R register."  *Id.* at 6:20-23.  "[T]he frequency channel response and noise information [is] as measured during the modem initialization" and "is reflected back to the tip and ring of the copper pair."  *Id.* at 6:24-27.  "The signal to noise ratio information is the show time information."  *Id.* at 6:27-28.  The invention is "similarly applicable to VDSL."  *Id.* at 3:5-6.

66.     The patent describes "[a] method of retrieving channel characteristics of a Digital Subscriber Line (DSL) channel having a plurality of bins, comprising the steps of: determining, at tip and ring terminals of a modem input port, and storing in data registers on a per bin basis a channel frequency response measurement and a noise measurement measured at initialization at a first end of the DSL channel without an effect of a filter or an automatic [g]ain controller; determining and storing in data registers on a per bin basis a signal-to-noise measurement measured at show time at the first end of the DSL channel without the effect of the filter or the automatic gain controller; and transmitting the channel frequency response measurement, the noise measurement and the signal-to-noise measurement from the first end to a second end of the DSL channel."  *Id.* at 6:33-49.

67.     On information and belief, Windstream operates high speed internet services including DSL services.

68.     Constellation is informed and believes, and thereon alleges, that Windstream has infringed and will continue to infringe, including via at least direct infringement, one or more claims of the '895 Patent, in violation of 35 U.S.C. § 271, by, among other things, operating,

selling and offering to sell within the United States, without authority or license from Constellation, services, including ADSL and VDSL services, that fall within the scope of one or more claims of the '895 Patent.

69.     Constellation is informed and believes, and thereon alleges, that Windstream had pre-suit knowledge of the '895 Patent.

70.     Despite its knowledge of the patent and evidence of infringement, Windstream continues to willfully infringe the '895 Patent.

71.     As a result of Windstream's infringement of the '895 Patent, Constellation has been damaged.  Constellation is entitled to recover for damages sustained as a result of Windstream's wrongful acts in an amount subject to proof at trial.

72.     In addition, Windstream's infringing acts and practices have caused and are causing immediate and irreparable harm to Constellation.

73.     Constellation is informed and believes, and thereon alleges, that Windstream's infringement of the '895 Patent has been and continues to be deliberate and willful, and that this is therefore an exceptional case warranting an award of treble damages and attorney's fees to Constellation pursuant to 35 U.S.C. §§ 284-285.

## FIFTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,134,917)

74.     Constellation re-alleges and incorporates by reference Paragraphs 1 through 18 as if fully set forth herein.

75.     The '917 Patent, entitled "Automatic Protection Switching Using Link-Level Redundancy Supporting Multi-protocol Label Switching" was duly and legally issued on March 13, 2012.  A true and correct copy of the '917 Patent is attached as Exhibit E.

76.     The '917 Patent names Andre N. Fredette, Loa Andersson, Naganand Doraswamy, and Anoop Ghanwani as co-inventors.

77.     The '917 Patent has been in full force and effect since its issuance.  Constellation

owns by assignment the entire right, title and interest in and to the '917 Patent, including the right to seek damages for past, current and future infringement thereof.

78.     The '917 Patent "relates to computer networks, and more specifically to a computer network that provides protection switching to reroute data packets in the event of a network link failure." Ex. E at 1:13-16.

79.     The patent describes using "a label switching protocol to establish paths with explicit routing for use in the event of a link failure in a computer network." *Id.* at 3:37-40.

80.     The patent also describes "[a] method comprising: providing protection switching in the event of a link failure associated with an intermediate routing node that delivers explicitly routed data packets from a source to a destination in a computer network, including identifying, for at least one link of the routing node, a backup routing path that is used by the routing node for forwarding affected data packets to the destination in the event of a failure of the at least one link, wherein the backup routing path is identified prior to the failure of the at least one link." *Id.* at 7:5-16.

81.     On information and belief, Windstream operates MPLS networks and deploys, among other things, MPLS fast reroute techniques.

82.     Constellation is informed and believes, and thereon alleges, that Windstream has infringed and continues to infringe, including via at least direct infringement, one or more of the '917 Patent, in violation of 35 U.S.C. § 271, by, among other things, operating, selling and offering to sell within the United States, without authority or license from Constellation, services, including MPLS services, that fall within the scope of one or more claims of the '917 Patent.

83.     Constellation is informed and believes, and thereon alleges, that Windstream had pre-suit knowledge of the '917 Patent.

84.     As a result of Windstream's infringement of the '917 Patent, Constellation has been damaged.  Constellation is entitled to recover for damages sustained as a result of Windstream's wrongful acts in an amount subject to proof at trial.

85.    In addition, Windstream's infringing acts and practices have caused and are causing immediate and irreparable harm to Constellation.

86.    Constellation is informed and believes, and thereon alleges, that Windstream's infringement of the '917 Patent has been and continues to be deliberate and willful, and that this is therefore an exceptional case warranting an award of treble damages and attorney's fees to Constellation pursuant to 35 U.S.C. §§ 284-285.

### PRAYER FOR RELIEF

WHEREFORE, Constellation prays for judgment against Windstream as follows:

    A.  That Windstream has infringed, and continues to infringe, each of the Patents-in-Suit;

    B.  That Windstream pay Constellation damages adequate to compensate Constellation for Windstream's infringement of the Patents-in-Suit, and treble damages for its willful infringement, together with interest and costs under 35 U.S.C. § 284;

    C.  That Windstream be ordered to pay pre-judgment and post-judgment interest on the damages assessed;

    D.  That Windstream be ordered to pay supplemental damages to Constellation, including interest, with an accounting, as needed;

    E.  That this is an exceptional case under 35 U.S.C. § 285 and that Windstream pay Constellation's attorney's fees and costs in this action; and

    F.  That Constellation be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Constellation hereby demands a trial by jury on all issues triable to a jury.

Dated:  December 11, 2013.                    Respectfully submitted,

                                               /s/ Harry L. Gillam Jr.
                                              Harry L. Gillam, Jr.
                                              State Bar No. 07921800
                                              GILLAM & SMITH, L.L.P.
                                              303 South Washington Avenue
                                              Marshall, Texas 75670
                                              Telephone:  (903) 934-8450
                                              Facsimile:  (903) 934-9257
                                              gil@gillamsmithlaw.com


OF COUNSEL:

Jason G. Sheasby
State Bar No. 205455 (California)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276
T – 310-203-7937
F – 310-203-7199
Email: jsheasby@irell.com

Benjamin W. Hattenbach
State Bar No. 186455 (California)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276
T – 310-203-7937
F – 310-203-7199
Email: bhattenbach@irell.com

Ellisen Shelton Turner
State Bar No. 224842 (California)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276
T – 310-203-7937
F – 310-203-7199
Email: eturner@irell.com

2919865

Hong (Annita) Zhong
State Bar No. 266924 (California)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276
T – 310-203-7937
F – 310-203-7199
Email: hzhong@irell.com

Zachary T. Elsea
State Bar No. 279252 (California)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276
T – 310-203-7937
F – 310-203-7199
Email: zelsea@irell.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service, on this the 11th day of December, 2013.

*/s/ Harry L. Gillam, Jr.*
Harry L. Gillam, Jr.

2919865

- 15 -